983 P.2d 602 (1999)
138 Wash.2d 937
The CITY OF BELLEVUE, a Washington municipal corporation, Respondent,
v.
EAST BELLEVUE COMMUNITY COUNCIL, a Washington municipal corporation, et al., Petitioner.
No. 67157-5.
Supreme Court of Washington, En Banc.
Argued May 20, 1999.
Decided September 9, 1999.
*603 Carol A. Morris, Kenyon Law Firm, Issaquan, for Petitioner.
Lori M. Riordan, Bellevue City Asst. Attorney, Bellevue, for Respondent.
MADSEN, J.
A community council has authority under RCW 35.14.040 to approve or disapprove comprehensive plans and zoning ordinances enacted by a city to the extent they apply to property within the community council's jurisdiction. Here, the East Bellevue Community Council had approved amendments to the comprehensive plan which eliminated open use designations, but then disapproved an ordinance enacted by the City of Bellevue to bring zoning for land formerly subject to the open use designation into conformance with the amended plan. At issue is whether a community council has authority under RCW 35.14.040 to disapprove a rezoning ordinance setting particular densities for parcels of land within a range of densities allowed under an amended comprehensive plan previously approved by the community council. We hold that a community council has such authority, and reverse the Court of Appeals.

Facts
In 1987, the City of Bellevue (City) decided to eliminate its long-standing "open use" zoning designation because the environmentally sensitive areas generally assigned the open use designation would be governed by the City's sensitive areas ordinance. When the Growth Management Act (GMA), chapter 36.70A RCW, was passed in 1990, the City believed elimination of the open use designation was also important because it would serve to accomplish one of the purposes of the GMA  promotion of uniformity and certainty *604 in land use regulation. The open use designation had allowed a broad range of densities. Accordingly, during the period between 1989 and 1993, the City's comprehensive plan was amended to eliminate the open use designation. More specific land use designations were created, some of which included a range of possible residential densities in specified areas.
One subarea of Bellevue affected by the amendments is the Crossroads subarea. This subarea is within the jurisdiction of the East Bellevue Community Council (Community Council), which governs a community municipal corporation created under the authority of RCW 35.14. RCW 35.14.010. Pursuant to RCW 35.14.040, a community council has authority to approve or disapprove comprehensive plan amendments and rezone ordinances, along with other land use ordinances passed by the city and affecting land within the territory of the community municipal corporation. The Community Council approved the comprehensive plan amendments in January 1994, but expressed concerns "about the Transportation Element and traffic congestion...." Community Council Resolution 348; Clerk's Papers (CP) at 20.
The City then began rezoning parcels and applying new designations to bring the zoning into conformity with the amended comprehensive plan. The City also recognized that this process was needed to satisfy the GMA's requirement that there be consistency between the comprehensive plan and zoning designations. See RCW 36.70A.040(3)(d); RCW 36.70A.130(1); RCW 36.70A.030(7).
At issue here is the Crossroads Subarea Rezone. In 1995 the City initiated nine rezone applications, all but one of which affected land within the Crossroads subarea. On December 4, 1995, the Bellevue City Council followed the recommendation of the hearing examiner and approved the nine rezones. Ordinance 4828; CP at 24-30. With regard to four of the eight areas within the Crossroads, areas 2, 3, 5, and 8, the City approved rezones to the highest density allowed under density ranges designated in the comprehensive plan for the areas, despite the Community Council's expressed concern that lower densities would be more appropriate. The comprehensive plan classified area 2 as single family medium density, allowing a zoning designation of R-2.5 or R-3.5. The area was rezoned at R-3.5. Area 5 was classified as single family low density, allowing either R-1 or R-1.8. It was rezoned at R-1.8. Areas 3 and 8 were classified as single family high density, allowing either R-4 or R-5. They were rezoned at R-5. (For each of these properties, the former open use designation allowed a potential maximum of five residential units per acre through the PUD (planned unit development) process.)
The nine rezones affect approximately 50 acres, with areas 1-5 consisting largely of wetlands, floodplains, a riparian corridor and associated setbacks. Area 2 and part of 5 are owned by the City and used as wetlands for drainage. Area 3 has an existing 32-unit apartment building (a legal nonconforming use) and a single residence. Area 8 consists of eight existing single family residences.
The Community Council held a public hearing and adopted Resolution 372-A, disapproving Ordinance 4828's rezones of areas 2, 3, 5, and 8. The Community Council determined that there was insufficient evidence to show that the Bellevue Land Use Code rezone criteria had been followed, and also determined that the rezones were inconsistent with the City's comprehensive plan policies applicable to the Crossroads subarea regarding traffic congestion and environmentally sensitive areas. Resolution 372-A explains that the comprehensive plan designates the level of service on roadways in the Crossroads areas as "D-" (with "F" as the worst). City of Bellevue's Resp. Br., App. I. The comprehensive plan shows future improvements at an intersection adjacent to the rezone areas, but at the same time acknowledges that the roadway improvements may create negative impacts, such as higher traffic volumes, speed and noise. Crossroads subarea policies S-CR-2, S-CR-3 and S-CR-4 provide that existing single family neighborhoods should be protected from encroachment by more intense uses, that land use density should be encouraged which will not intensify vehicular congestion, and that development of vacant land in the Crossroads *605 should be compatible with surrounding areas. Policy S-CR-30 states that restrictions should be considered on land development and density as a viable means of controlling unacceptable traffic congestion.
The Community Council recognized, however, that the density designations in Ordinance 4828 conformed to the comprehensive plan density ranges.
On January 22, 1996, the City filed suit against the Community Council, claiming that the Community Council's decision to disapprove Ordinance 4828 was in violation of the comprehensive plan and the GMA and requesting a finding that the Community Council's disapproval was "arbitrary, capricious, and contrary to law." CP at 14. The City sought issuance of a statutory writ of certiorari and a declaratory judgment that Resolution 372-A is invalid. The Community Council argued that these forms of relief were not available. The City subsequently abandoned its request for a statutory writ and asked the court to exercise its inherent authority and convert the City's request for a statutory writ into a request for a constitutional writ.
The superior court invalidated Resolution 372-A. The court ruled that it had inherent jurisdiction to consider the City's request for a writ under Const. art. IV, § 6. The court concluded that the Community Council did not have authority pursuant to RCW 35.14.040 to disapprove Ordinance 4828 because the designations in the rezones were consistent with the land use designations in the comprehensive plan amendment previously approved by the Community Council. The court held that the Community Council's disapproval of the ordinance was arbitrary and capricious. The court also held that Community Council's disapproval is contrary to the requirements of the GMA that the City's zoning be consistent with the comprehensive plan and is therefore void as a matter of law; a declaratory judgment in the City's favor was granted on this issue.
The Community Council appealed. The Court of Appeals held that the superior court erred in granting declaratory relief, but concluded that the court had jurisdiction to decide the dispute under a constitutional writ of review. The Court of Appeals affirmed the order invalidating Resolution 372-A. We granted discretionary review. City of Bellevue v. East Bellevue Comm. Coun., 91 Wash. App. 461, 957 P.2d 267 (1998), review granted, 137 Wash.2d 1008, 978 P.2d 1097 (1999).

Analysis
The only questions raised by the parties in this court concern issues reviewed by the superior court under its inherent authority pursuant to Const. art. IV, § 6. "The fundamental purpose of the constitutional writ of certiorari is to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority." Saldin Securities, Inc. v. Snohomish County, 134 Wash.2d 288, 292, 949 P.2d 370 (1998) (citing Bridle Trails Community Club v. City of Bellevue, 45 Wash.App. 248, 252-53, 724 P.2d 1110 (1986)). Judicial review is not full appellate review, but instead involves consideration only of whether, based on the administrative record, the tribunal's decision was illegal or arbitrary or capricious. Leavitt v. Jefferson County, 74 Wash.App. 668, 678, 875 P.2d 681 (1994); see Saldin, 134 Wash.2d at 292, 949 P.2d 370.[1]
Accordingly, our first inquiry is whether the Community Council acted illegally. The Community Council contends that the Court of Appeals erred in holding that it lacked authority to disapprove the rezone ordinance.
RCW 35.14.040 provides:
The adoption, approval, enactment, amendment, granting or authorization by the city council or commission of any ordinance or resolution applying to land, buildings *606 or structures within any community council corporation shall become effective within such community municipal corporation either on approval by the community council, or by failure of the community council to disapprove within sixty days of final enactment, with respect to the following:
(1) Comprehensive plan;
(2) Zoning ordinance;
. . . .
Disapproval by the community council shall not affect the application of any ordinance or resolution affecting areas outside the community municipal corporation.
The Court of Appeals reasoned that the Community Council had no authority to disapprove the rezone ordinance because the densities adopted were consistent with the comprehensive plan which the council had previously approved. We disagree.
The principal rule of statutory construction is that the Legislature's intent must be carried out. Roberts v. Johnson, 137 Wash.2d 84, 91, 969 P.2d 446 (1999); City of Redmond v. Central Puget Sound Growth Management Hearings Bd., 136 Wash.2d 38, 53, 959 P.2d 1091 (1998). Legislative intent is determined primarily from the language of the statute itself. Roberts, 137 Wash.2d at 91, 969 P.2d 446. RCW 35.14 provides that a community council elected by qualified voters residing within the service area governs a community municipal corporation. RCW 35.14.020. These elected officials have a significant role in determining land use regulations within the community municipal corporation. RCW 35.14.040 provides that when annexation occurs existing land use ordinances, resolutions and controls remain in effect and shall be enforced by the city, pending any enactments or amendments to zoning or land use control ordinances which the community council does not disapprove. The quoted portion of the statute set forth above vests approval/disapproval authority in the community council with regard to comprehensive plans and zoning ordinances. The statute additionally grants such authority with regard to conditional use permits, special exceptions and variances, subdivision ordinances, subdivision plats and planned unit developments.
The obvious purpose of the statute is to place final decision-making power in the community council where land use regulations affecting property within its jurisdiction are concerned. RCW 35.14.040 provides a community council with authority to independently determine whether to approve or disapprove land use legislation affecting territory within its jurisdiction, in keeping with the Legislature's intent to allow local level decision-making. Therefore, where there is room for exercise of discretion as to whether particular land use regulations should be applied to property within the municipal corporation, the community council must be allowed to exercise that discretion to carry out the legislative intent underlying RCW 35.14.040.
The City maintains, however, that the Community Council has already exercised its judgment by approving the amended comprehensive plan and the range of densities contained in the plan. The City's view, however, would narrow the reach of the statute and restrict local level decision-making in contravention of the statute's purpose. Where there is room for discretion under the comprehensive plan, the statute clearly allows the Community Council to exercise authority to approve or disapprove discretionary decisions by the city council. Just as the city council must choose among available densities identified in the comprehensive plan, the Community Council has the authority to disagree.
The City's position is also inconsistent with the plain language of the statute granting authority to approve or disapprove zoning decisions. The City's argument that the Community Council has already approved the comprehensive plan and the density ranges in the plan and is therefore precluded from revisiting the issue when reviewing zoning ordinances would have the effect of writing the authority to approve or disapprove zoning ordinances out of RCW 35.14.040.
Some of the parties' arguments on this issue appear to be based on the premise that before the Community Council may disapprove *607 a zoning ordinance enacted by the City Council, it must determine that the City has failed to exercise its discretion consistently with its rezone criteria and comprehensive plan policies. Put another way, the assumption seems to be that the City's decision must have been wrong in some respect before the Community Council can exercise its authority to disapprove land use regulations within the purview of RCW 35.14.040. This is an erroneous assumption. First, it implies that the only authority granted by the statute is to review the City's actions. Nothing in the statutory language indicates that the Community Council has such limited authority or that the Community Council acts as a reviewing body. Also, such a reading would mean that if the City's action were lawfully within its authority and discretion, the Community Council could do no more than "rubber stamp" the City's land use legislation.
Second, even if the statute were amenable to such a reading (which it is not), that reading would render the statute superfluous, contrary to the rule of statutory construction that a statute be given meaningful effect. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (statutes should be interpreted and construed so that no portion is rendered meaningless or superfluous). If the statute merely allowed review of the propriety of the city council's action, the Community Council would be duplicating the roles of affected parties who complain about unlawful land use regulations as well as reviewing agencies or courts assessing the validity of the regulations.
On the question whether the Community Council's action was illegal, the City also argues that the requirements of the GMA preclude the Community Council's action because it put the City out of compliance with the amended comprehensive plan and the GMAsince the open use designations would then still be in place. This argument is erroneous. The GMA is in general relevant to authority under RCW 35.14.040, because a city is obligated to rezone in conformity with an amended comprehensive plan and a Community Council cannot disregard applicable provisions of the GMA.[2] However, in this case the City still has the option of rezoning to lower densities and thus be in conformance with the comprehensive plan and the GMA.[3] The Community Council did not act illegally.
The next question in reviewing this matter pursuant to a constitutional writ of review is whether the Community Council nevertheless acted arbitrarily or capriciously. A decision is arbitrary and capricious if it is "`willful and unreasoning action, without consideration and in disregard of facts and circumstances.'" Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 695, 658 P.2d 648 (1983) (quoting State v. Rowe, 93 Wash.2d 277, 284, 609 P.2d 1348 (1980)); Leavitt, 74 Wash.App. at 678, 875 P.2d 681. Where there is room for two opinions, a decision is not arbitrary and capricious. Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648 (quoting Rowe, 93 Wash.2d at 284, 609 P.2d 1348). The trial court held that the Community Council acted arbitrarily and capriciously. The Court of Appeals did not reach the issue.
The Community Council decided that the rezones did not comply with city land use code provisions governing rezoning, *608 BLUC 21.30A.140, or with amended comprehensive plan policies applying to the Crossroads. As explained above, the statute does not require the Community Council to show affirmatively that the City's decision was erroneous in some way. Even if the City's decision satisfied all criteria, it does not follow that the Community Council's disapproval would be arbitrary and capricious. Either high or low density could satisfy applicable standards; indeed, the comprehensive plan contemplates this by allowing a range of possible densities. Put another way, given that the ranges with both high and low densities have been approved along with the plan policies, there is room for two opinions as to which density should be applied.
This record plainly establishes that while the Community Council may have misconceived its role under RCW 35.14.040 to some extent, in that it sought to show the City's actions were improper, its decision clearly was not arbitrary or capricious. The Community Council concluded that the lower allowable densities were more consistent with amended comprehensive plan policies concerning vehicular traffic and traffic congestion than the higher densities adopted by the City. The Community Council had authority to conclude that of possible densities, the lowest would be better given existing severe traffic congestion in the area. Since the lower densities were also within contemplation of plan policies when the comprehensive plan was adopted, disapproval of the higher densities given traffic problems was not arbitrary or capricious.
The City claims, though, that the Community Council engages in the wrong comparison, and that in deciding whether there is a greater development potential under the rezone ordinances, with attendant traffic considerations, the comparison must be between the zoning potential under the open space designations and the rezone designations adopted. Because the open space zoning allowed a potential five units per acre through the public utility department process, the City urges, the densities for the properties at issue either remained the same or decreased. However, the City points to nothing which requires the Community Council, in exercising its approval/disapproval authority under RCW 35.14.040, to find that existing zoning is "better" than the proposed rezoning (particularly where the existing zoning must, under the GMA, be changed). Here, for example, while the City clearly needed to rezone, it had flexibility in designating the densities for the relevant areas under the amended comprehensive plan.
The Community Council's decision to disapprove Ordinance 4828's rezones of areas 2, 3, 5, and 8 was not arbitrary or capricious.
We reverse the Court of Appeals' decision and reverse the superior court's judgment invalidating Resolution 372-A.
GUY, C.J., SMITH, JOHNSON, ALEXANDER, TALMADGE, SANDERS, IRELAND, JJ., and SEINFELD, J.P.T., concur.
NOTES
[1] There is no issue about whether a constitutional writ is a proper vehicle for review in this case. The statutory writ is improper because the Community Council was not exercising a judicial or quasi-judicial function. See RCW 7.16.040; Raynes v. City of Leavenworth, 118 Wash.2d 237, 821 P.2d 1204 (1992); Leavitt v. Jefferson County, 74 Wash.App. 668, 875 P.2d 681 (1994). Although the Community Council challenged use of the constitutional writ, it did not argue that the constitutional writ is improper, but instead raised issues regarding pleading and timeliness.
[2] The Community Council argues that the comprehensive plan is merely a "guide" as to such designations. See RCW 36.70A.040(3)(d); RCW 36.70A.130(1). Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 947 P.2d 1208 (1997), relied on by the Community Council, does not apply here because unlike the situation there, this case does not involve a decision regarding development of a specific piece of property where the comprehensive plan and the specific zoning are inconsistent. Instead, this case involves rezones designed to implement the designations in the comprehensive plan.
[3] There is no indication that any proceedings involving the City were pending or threatened based upon noncompliance with the GMA.

Because the Community Council has authority under RCW 35.14.040 to reject a rezone where a range of densities are allowable under the comprehensive plan, the fact that the effect of its decision is to force a different density makes no difference. There is no merit to the City's claim that the Community Council is unlawfully attempting to amend the City's ordinance to provide for lower densities.